# In the United States Court of Federal Claims

No. 22-131C

(Filed: Monday, October 17, 2022)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * *<br><br>DAVID BOLAND, INC.,<br><br>                    *Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>                    *Defendant*.<br><br>* * * * * * * * * * * * * * * * * * * * * * * * | 28 U.S.C 1491 (2018); Contract Disputes Act, 41 U.S.C. §§ 7101-09, 7103 (2018); FAR 52.233-3; Contracts; motion to dismiss; subject matter jurisdiction; failure to state a claim |

*Denis L. Durkin*, Orlando, FL, for plaintiff. *Michael S. Vitale* and *Brian V. Johnson*, of counsel.

*Jimmy S. McBirney*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Steven J. Gillingham*, Assistant Director, for defendant. *Brett R. Howard*, Deputy District Counsel and *James M. Inman*, Trial Attorney, of counsel.

## OPINION

BRUGGINK, *Judge*.

The United States, through the United States Army Corps of Engineers, contracted with plaintiff, David Boland, Inc. (Boland), to construct a new building for a "military and training center" in Dublin, California. Pending is the government's motion to dismiss four of the complaint's six counts, either for lack of subject matter jurisdiction or failure to state a claim on which relief can be granted. The motion is fully briefed, and oral argument was held on October 13, 2022. We grant in part and deny in part.

BACKGROUND[1]

This complaint arises out of a government contractor's unsuccessful requests for equitable adjustments (REA). The government awarded Boland with Contract No. W912QR-16-C-0013 (the contract) to construct a new building for U.S. Army Reserve personnel on July 6, 2016. The parties encountered obstacles, which prompted Boland's disputed REAs.

Bid Protest Delay (Counts I and II)

Shortly after the contract was awarded, an unsuccessful bidder filed a protest with the Government Accountability Office (GAO). In compliance with regulatory requirements, the government issued a notice to suspend performance.[2] Several months later, GAO resolved the protest, and the government issued a notice to proceed on November 28, 2016.

Boland believed that the bid-protest performance delay increased its cost of performance. Particularly, Boland claimed that it could not "secure certain previously selected subcontractors and suppliers" and "enter[ed] into contracts with other companies at increased costs." Compl. Ex. B. To recover for those costs, Boland submitted an uncertified REA (2017 REA) for $262,060 on October 25, 2017. *Id.*

Not long after, the government informed Boland that its 2017 REA needed to "provide actual quotes from [its] subcontractors and suppliers." Mot. to Dismiss App. 1. Boland could not, in its own view however, "isolate the additional actual costs incurred" and instead used "published standards" to estimate its increased costs. Compl. ¶ 22. Ultimately, Boland never provided the government with actual cost data, leaving the issue unresolved.[3]

---

[1] The background is drawn from the complaint and the attached materials.

[2] Under FAR 33.104(c)(1), the contracting officer "shall immediately suspend performance" when the "agency receives notice of a protest from the GAO."

[3] After several years, Boland eventually certified its 2017 REA and requested a final decision, which the government never issued.

At an impasse, Boland submitted a second certified REA on November 2, 2020 (2020 REA), seeking an additional $329,296 in unabsorbed home office overhead incurred during the bid-protest delay. Compl. Ex. C. While Boland still "maintain[ed] that there were significant increased costs of construction," it "resolved itself to the fact" that it cannot "provide actual cost records." *Id.* Nevertheless, it believed that the government owed compensation for unabsorbed overhead. On February 9, 2021, the government issued a Contracting Officer's Final Decision (COFD) denying Boland's 2020 REA because it was untimely and failed to meet the regulatory requirements to recover unabsorbed overhead.[4]

Power Delay (Counts III and IV)

Completion of the contract required a power supply to the construction site. To supply the necessary power, the government was required to contract with Pacific Gas and Electric Company (PG&E). Setbacks ensued, and the provision of power was delayed. While the parties dispute who was responsible for the power delay, they appear to agree on the following facts.

PG&E needed to inspect the construction site. When PG&E inspected the site, it noted several deviations from what the contract required. Boland eventually corrected those variances, and the government then signed the contract with PG&E. Despite site readiness, installation of the power transformer was scheduled to take place in a couple of months. Both parties understood that this timeframe would delay the project's completion, but the government claimed that nothing could be done to speed up the process. With waiting being the only option, the transformer was installed 8 weeks later.

To recover for the extended project completion time in 2018, Boland submitted a certified REA for $311,411.22 (Power REA), maintaining that the power delay "was within the government's responsibility." Compl. Ex.

---

[4] The contracting officer determined that the 2020 REA was untimely under FAR 52.243-4, the FAR provision for "Changes." While 52.243-4 was inapplicable, a timeliness issue did exist. As we later discuss, REAs for bid-protest delay must be submitted within 30 days of a notice to proceed under FAR 52.233-3.

G. In its REA, Boland claimed that late power installation delayed the project's completion by 82 days. The government denied the REA and instead agreed only to a non-compensable time extension. Unsatisfied with the government's offer, Boland hired an independent consulting firm, AM Sist Consulting (AMS). AMS concluded that the government owed Boland compensation for 70 additional days. Based on AMS's report, Boland resubmitted its REA in 2020 and requested an adjusted amount of $241,636. The contracting officer denied Boland's adjusted Power REA. In her COFD, the contracting officer explained that it was Boland's protracted site preparation that delayed execution of the PG&E power supply contract.

CIP Wall Repair (Counts V and VI)

Construction of the building required Boland to install "cast in place" (CIP) walls. After Boland installed part of the first wall, it discovered defects and promptly notified the government. To assess the situation, Boland hired an engineer who evaluated the wall's defects and concluded that they did not "impact the structural adequacy of the wall." Compl. Ex. J (CIP Wall REA). Despite the report, the government feared "increased liability" and issued a stop-work order. Compl. ¶ 72. During that time, tests on the wall continued, and Boland eventually addressed the faulty installation process successfully with a revised concrete mix. *See* Compl. Ex. J. For the CIP walls already installed, Boland compiled a supplementary report to demonstrate the wall's structural integrity and show that it could be adequately repaired. The government agreed and lifted the stop-work order.

The engineering tests increased Boland's costs. So too, did the stop-work order delay. Hoping to recoup its losses, Boland submitted a certified REA in 2018, and again in 2019, for $200,967 (CIP Wall REA). Negotiations ensued, and a provisional agreement was reached. The agreement fell through, however, over allegedly inaccurate scheduling information. In her COFD, the contracting officer concluded that Boland was entitled to only $18,975—the cost of certain tests which were performed at the government's request and outside of Boland's contractual obligations.

Procedural History

Boland filed its complaint on February 8, 2022. It alleges in Counts I, III, and V that it is entitled to equitable adjustments. Each REA-based count

4

has a parallel count—Counts II, IV, and VI—which asserts that the government breached its implied duty of good faith and fair dealing. The United States has moved to dismiss Counts I, II, IV, and VI for lack of subject matter jurisdiction or failure to state a claim on which relief can be granted. It has not moved to dismiss Counts III and V.

DISCUSSION

I.  Subject Matter Jurisdiction

Like all federal courts, the Court of Federal Claims is one of "limited jurisdiction" that is "defined . . . by federal statute." *Badgerow v. Walters*, 142 S. Ct. 1310, 1315 (2022). The relevant jurisdictional statute here is the Tucker Act, 28 U.S.C. § 1491 (2018), which "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States," *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). It includes actions against the United States founded on "any express or implied contract with the United States." § 1491(a)(1).

The Contract Disputes Act (CDA) "grants the court jurisdiction over actions brought on claims within twelve months of a contracting officer's final decision." *James M. Ellet Const. Co. v. United States*, 93 F.3d 1537, 1541 (Fed. Cir. 1996); 41 U.S.C. § 7104(b)(3). For jurisdictional purposes, then, there must be "both a valid claim and a contracting officer's final decision on that claim." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010). The CDA does not define a "claim," though, so we must "look to the definition of 'claim' in the FAR." *Creative Mgmt. Servs. v. United States*, 989 F.3d 955 (Fed. Cir. 2021). Section 2.101 provides that a "[c]laim means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 CFR § 2.101 (2021).

The plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When a defendant moves to dismiss for lack of subject matter jurisdiction, the court assumes that the undisputed facts in the complaint are true and draws reasonable inferences in the plaintiff's favor. *Acevedo v. United States*, 824 F.3d 1365, 1368 (Fed. Cir. 2016).

In its motion to dismiss, the government argues that Count I (based on the REAs for bid-protest delay) was improperly submitted to the contracting officer because Boland did not present its REAs for increased supplier costs and unabsorbed overhead at the same time. In Counts II, IV, and VI (the claims for bad faith), however, the government argues that Boland never submitted those claims to the contracting officer at all. The issue, then, is whether Boland submitted valid claims to the contracting officer.

A. Count I—Boland's REAs for Bid-Protest Delay

In Count I—based on Boland's 2017 REA for increased costs and its 2020 REA for unabsorbed overhead—Boland alleges that the government's "unilateral directive to suspend performance on the contract delayed the project's completion, increased Boland's cost of construction, and constituted a direct change to the Contract," entitling it to an equitable adjustment. Compl. ¶ 93.

The government moves to dismiss Count I for lack of subject matter jurisdiction because Boland's complaint seeks to impermissibly combine two REAs into one. While Boland submitted two separate REAs to the contracting officer (the 2017 and 2020 REAs), it now combines those two REAs into one count.[5] The government argues this is impermissible because the two claims were separately presented to the contracting officer, and this court can only have jurisdiction if Boland presents those REAs as separate counts. It also argues that this court cannot have jurisdiction over the 2017 REA because it was a "facially invalid claim" that failed to provide actual cost data.

For jurisdictional purposes, all that the CDA requires is a "valid claim and a contracting officer's final decision on that claim." *Maropakis*, 609 F.3d at 1327. In this case, Boland satisfied those two jurisdictional requirements. Boland's 2017 and 2020 REAs (which together make up Count I) were

---

[5] Within the same argument, the government asserts that Boland withdrew its 2017 REA for increased subcontractor and supplier costs when it later submitted its 2020 REA for only unabsorbed overhead. We find no merit in this argument. In its 2020 REA, Boland stated that it still "maintain[ed] that it was entitled to" recover increased costs of construction. Compl. Ex. C.

certified claims submitted to the contracting officer, and Boland filed its complaint within 12 months of the contracting officer's final decision or lack thereof. These undisputed facts are all that are necessary to establish jurisdiction over Count I.

About the government's suggestion that Boland needed to submit one combined claim to the contracting officer, we know of no such requirement. Not only does the government's position lack support in the CDA—which does not speak to how counts must be structured—but it also subverts the CDA's purpose. Requiring Boland to resubmit two previously denied certified claims as one would be "inimical to two goals of the CDA: providing for the efficient and fair resolution of contract claims." *Reflectone*, 60 F.3d at 1580; *cf. Ellett*, 93 F.3d at 1545 (stating that it would be a "futile act" for a contractor to formally submit a claim to the contracting officer after the contracting officer has already made a final determination). All that the CDA requires is that a contracting officer have the first opportunity to review a contractor's claim. *Scott Timber Co. v. United States*, 333 F.3d 1358, 1366 (Fed. Cir. 2003). The contracting officer had that opportunity here, so Boland's resubmission of one combined REA would serve no purpose.

Finally, there is no merit to the government's argument that Boland's 2017 REA was a "facially invalid claim" because it failed to include actual cost data. "[N]either the CDA nor its implementing regulations . . . requires submission of a detailed cost breakdown or other specific cost-related documentation with the claim." *H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563, 1564 (Fed. Cir. 1995). An REA satisfies the definition of a claim, *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1577 (Fed. Cir. 1995), and nothing more is required, *Maropakis*, 609 F.3d at 1327. Thus, this court has jurisdiction over Count I, and we deny the government's motion to dismiss it.

B. Counts II, IV, and VI—Boland's Claims for Breach of Implied Duties

Boland asserts in these three counts that the government breached its implied duty of good faith and fair dealing. The government counters that Boland never presented these claims for breach to the contracting officer. We must decide, then, whether Boland's implied duty claims are "based on [a] claim previously presented to and denied by the contracting officer." *Scott Timber*, 333 F.3d at 1365.

"[T]wo claims may be considered the same for CDA jurisdictional purposes if they arise from the same operative facts, claim essentially the

same relief, and merely assert differing legal theories for that recovery." *Kiewit Infrastructure W. Co. v. United States*, 972 F.3d 1322, 1328 (Fed. Cir. 2020) (internal quotations omitted). In *Reliance Insurance Company v. United States*, the Federal Circuit explained that a request for equitable adjustment is not a "clear and unequivocal claim" for a violation of the "duty of good faith." 931 F.2d 863, 866 (Fed. Cir. 1991). On that basis, the court determined that it had no jurisdiction to consider any separate claims based on breach of contract for good faith and fair dealing. *Id.* We do not read *Reliance* to mean that an REA can never be a clear and unequivocal claim for breach of contract. *Cf. Crown Coat Front Co. v. United States*, 386 U.S. 503, 511 (1967) ("[T]he contractor has agreed in effect to convert what otherwise might be claims for breach of contract into claims for equitable adjustment."). Rather, *Reliance* simply rejects the position that an REA is by itself also a claim for breach of contract. We therefore must engage in a fact-based inquiry to determine whether Boland's claims for breach of contract are the same as its requests for equitable adjustments. We address each claim in turn.

### 1.  Count II—Bid-Protest Delay

Three things must be true for two claims to be considered the same: (1) the claims are based on the same operative facts; (2) the claims seek essentially the same relief; and (3) the claims assert the same or similar legal theory for relief. *See Kiewit*, 972 F.3d at 1328. First, the 2017 REA, which sought to recover only for increased subcontractor and supplier costs. The government denied Boland's 2017 REA for failure to provide actual cost data. Boland argues in this court that the government breached its duty of good faith and fair dealing because its denial was "pretextual" since the government knew that providing actual cost data was not possible. Compl. ¶ 21.

"Operative facts are the essential facts that give rise to a cause of action." *Renda Marine, Inc. v. United States*, 71 Fed. Cl. 378, 389 (2006). The operative facts necessary to establish a claim that the government has breached its implied duties include whether the government "destroy[ed] the reasonable expectations of the other party," or "interfere[d] with or fail[ed] to cooperate in the other party's performance." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (citing *Restatement (Second) of Contracts*, § 205 (1981)). By contrast, a claim to recover increased costs incurred from bid-protest delay need only show a causal relationship between the "stop-work

order" and an "increase" in "the Contractor's cost[s]." FAR 52.233-3.

As Boland appeared to concede at oral argument, its 2017 REA "did not include the operative facts underlying a breach of the duty of good faith and fair dealing." *Walsh Constr. Co. v. United States*, 132 Fed. Cl. 282, 291 (2017). Instead, Boland merely informed the government of "price increases" and requested an equitable adjustment. Compl. Ex. E. Nothing in Boland's 2017 REA suggests that the government acted in bad faith or "pretextual[ly]. Compl. ¶ 21. At best, Boland's request for a final decision simply acknowledged that the government demanded actual cost data. But that acknowledgment, by itself, is not a "clear and unequivocal statement that gives the contracting officer adequate notice of the basis . . . of the claim." *Scott Timber*, 333 F.3d at 1365.

Next, the 2020 REA. Boland's 2020 REA requested reimbursement for its unabsorbed overhead during the bid protest. Compl. Ex. C. Boland argues now that the government breached its duty of good faith and fair dealing by erroneously denying the 2020 REA.

We can readily reject this argument. To establish jurisdiction, Boland's *claim* to the contracting officer must allege bad faith (or at least the same operative facts). *Maropakis*, 609 F.3d at 1327. Yet Boland does not point to its claim. It curiously points instead to the contracting officer's *final decision*, arguing that the contracting officer's misapplication of the law was in bad faith. But an erroneous decision—even the most egregious—could not itself be part of the original claim submitted to the contracting officer. More to the point, this court "does not review the CO's decision; it conducts *de novo review of the claims that were put before the CO*." *Accord HCIC Enterprises, LLC v. United States*, 149 Fed. Cl. 297, 301 (2020) (emphasis added); *Bell/Heery v. United States*, 106 Fed. Cl. 300, 308 (2012) ("This court hears suits directly on the claim, not appeals of contracting officers' decisions." (internal quotations omitted)). We have jurisdiction to review only Boland's claim to the contracting officer, and that claim did not include a breach of the implied duty of good faith. Thus, we dismiss Count II for lack of subject matter jurisdiction.

2. Count IV—Permanent Power Delay

The impediments to securing power for the construction site delayed the project's completion. Boland's Power REA claimed that it "was within the government's responsibility" to reach an agreement with PG&E to

maintain schedule. Compl. Ex. G. Similarly, in Count IV of Boland's complaint, it argues that the government's "inability to timely enter into an agreement with PG&E . . . constitute[d] a breach of the duty of good faith and fair dealing." Compl. ¶ 105.

Boland's Power REA does not rest on the same operative facts as a breach of implied duties claim nor was the latter claim expressly presented to the contracting officer. To recover for performance delay, a contractor must "establish the extent of the delay, the contractor's harm resulting from the delay, and the causal link between the government's wrongful acts and the delay." *Essex Electro Engineers, Inc. v. Danzig*, 224 F.3d 1283, 1295 (Fed. Cir. 2000). On the other hand, a breach of implied duties claim looks to whether the government destroyed the reasonable expectations of the other party or interfered with or failed to cooperate in the other party's performance. While these may sound similar, a breach of the implied duty of good faith requires something more. Courts "presum[e] that government officials act in good faith." *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239 (Fed. Cir. 2002). To prevail, a contractor must show "that the government had a specific intent to injure it." *Caldwell & Santmyer, Inc. v. Glickman*, 55 F.3d 1578, 1581 (Fed. Cir. 1995).

Here, Boland asserts facts that, if proven, would entitle it to recover for performance delay. Even so, Boland's Power REA contains nothing to suggest that "the government had a specific intent to injure it." *Id.* A charge that the government did not satisfy its contractual obligations, without more, is not "specific enough to give the officer notice of [a claim of failure to act in good faith] and allow him to make an informed judgment." *Monterey Consultants, Inc. v. United States*, 159 Fed. Cl. 641, 651 (2022). For that same reason, Boland also could not have expressly presented the claim, as it would have required Boland to allege a specific intent to injure. As a result, Boland's Power REA is not the same as a claim for breach of implied duties nor was it expressly presented to the contracting officer. We therefore dismiss Count IV for lack of subject matter jurisdiction.

3. Count VI—CIP Wall Delay

Finally, in Boland's CIP Wall REA, Boland alleged that the government's suspension of work was unwarranted and unreasonable. Compl. Ex. J. In Count VI, however, Boland claims that the government's "inability to engage [with Boland] in a timely manner," "its unjustified and

unsupported stop work order," "its denial of Boland's REA," and "its repudiation of [the provisional] agreement" all violated the government's duty of good faith and fair dealing. Compl. ¶ 112.

Once again, Boland's breach of good faith claim does not rest on the same operative facts as the CIP Wall REA. While Boland's CIP Wall REA may have asserted the operative facts for a performance-delay claim, it did not include an assertion that "the government had a specific intent to injure it." *Caldwell & Santmyer*, 55 F.3d at 1581. For that reason, its CIP Wall REA and its implied duty claim are not the same. Thus, we dismiss Count VI for lack of subject matter jurisdiction.

## II.  Failure to State a Claim[6]

The government moves to dismiss Count I for failure to state a claim. Count I involves Boland's 2017 and 2020 REAs for increased subcontractor and supplier costs and unabsorbed overhead incurred during the bid-protest delay.

On a Rule 12(b)(6) motion to dismiss, the court will "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court accepts as true the "well-pleaded factual allegations" in the complaint and determines whether those allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If the well-pleaded facts asserted by the plaintiff do not "entitle him to a remedy" under the law, the claim should be dismissed. *Perez v. United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998).

Under FAR 52.233-3, a contractor is entitled to an equitable adjustment for bid-protest delay if two things are true: (1) the "stop-work order" increased the contractor's cost of performance; and (2) the contractor "asserts its right to an adjustment within 30 days" of the notice to proceed, or the contracting officer "act[s] upon" an untimely proposal. FAR 52.233-

---

[6] Because we conclude that we have no jurisdiction over Counts II, IV, and VI, we do not decide whether they state a claim. We review only Count I— the only remaining count subject to the motion to dismiss.

3(b). This seemingly straightforward provision is at the center of the current controversy.

The parties do not dispute that Boland's bid-protest REAs were untimely. They disagree, however, over whether Boland's failure to comply with the deadline bars the claim. In the government's view, the claims were late, and the contracting officer did not "act upon" either proposal. On the other hand, Boland argues that its untimeliness is not dispositive—not because the contracting officer acted on the proposal, but because the regulation "does not speak to what happens if a claim is not made within 30 days." Pl.'s Resp. 29.

We are unpersuaded by Boland's strained reading of FAR 52.233-3. Despite Boland's suggestion to the contrary—for which it cites no supporting authority—the regulation *does* speak to untimely claims. The regulation explains that a contractor is entitled to an equitable adjustment only "if" the request is brought within 30 days after work resumes or the contracting officer acts upon the untimely claim. FAR 52.233-3(b)(2). And when interpreting a statute, "we look first to the word's ordinary meaning." *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 454 (2012) (using dictionaries to determine ordinary meaning). With that in view, the word "if" "introduc[es] a clause of condition," If, *Oxford Dictionary*, (2d online ed. 1989), which is "[s]omething demanded or required as a prerequisite to the granting or performance of something else," Condition, *Oxford Dictionary* (2d online ed. 1989). Simply put, the regulation means what it says: if the contractor does not submit the REA within 30 days, the government may adjust the contract, but it is not required to. Compliance with the provision is therefore a precondition to bringing a claim.

Finally, to bypass FAR 52.233-3 altogether, Boland appears to take the CDA where no contractor has taken it before. The CDA in effect preempts FAR 52.233-3 because the CDA allows a contractor to "bring an action directly on the claim in the United States Court of Federal Claims, *notwithstanding any contract provision, regulation, or rule of law to the contrary*." § 7104(b) (emphasis added). Yet there is no case where Section 7104(b) acted as an "ace in the hole" with the power to trump seemingly nettlesome FAR provisions. Instead, this court has consistently interpreted Section 7104(b) to be only jurisdictional and presupposes a valid claim exists. *See, e.g.*, *Westdale N.W. Ctr. v. United States*, 154 Fed. Cl. 557, 576 (2021). Boland has no underlying claim, and Section 7104(b) cannot provide

it with one.

It is undisputed that Boland failed to present either bid-protest REA to the contracting officer within 30 days of the notice to proceed. As a result, Count I fails to state a claim, and it must be dismissed.

CONCLUSION

For the reasons stated above, the government's motion to dismiss is granted in part and denied in part. Counts II, IV, and VI are dismissed for lack of subject matter jurisdiction. Count I is dismissed for failure to state a claim. The parties are directed to file a joint status report regarding further proceedings on or before November 15, 2022.


s/Eric G. Bruggink
ERIC G. BRUGGINK
Senior Judge

13